[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married on January 10, 1964 in Palling, New York. There have been two children issue of the marriage, Kevin and Kathy. Both children are now grown. Kevin is 31 years of age and Kathy is 29 years of age and still resides in the family home.
During the entire marriage of the parties they lived on the farm where the defendant was born and raised. When the parties married, the plaintiff was eighteen years of age and the defendant twenty years of age. At the time of their marriage, the plaintiff was five months pregnant with Kevin. She is a high school graduate and took some post secondary business courses. The defendant left school after tenth grade to care for his dying mother and help support the family. His mother died in 1963, and the defendant purchased the farm from his mother's estate funded by a mortgage for $14,000 and his share of his mother's estate valued at $7,000.
Over the years, the parties have made vast improvements to the farm. The farm consists of two residences and two barns. The defendant has removed rocks from the fields and erected fences. In 1956, Mrs. Thomson's father died leaving her $20,000 when she turned 21 in 1966. Her uncle died in 1965 leaving her an additional $50,000. The $70,000 combined inheritances were used by the plaintiff to build a modern house completed in 1967. Since that time, the old farm house has been rented, which rent essentially pays the mortgage and taxes for the entire property. In 1986, the plaintiff's mother, Mrs. Hamaan, contributed $56,000 to create an in-law apartment and to expand the garage. The oral CT Page 11286 agreement reached with Mrs. Hamaan was that she could live in the apartment "for the rest of her life." The old barn was reconditioned and a new barn constructed with 14 stables together with a "run-out" and a riding ring.
The real property is the chief asset of the parties. The court has been presented with three different appraisals regarding the valuation of this property. Linda Murphy valued the property at $657,000; Gerald Sholen valued the property at $747,000 less the cost of a survey to determine the town line between Easton and Monroe estimated to cost $20,000; and Robert Brooks valued the property at $849,000. However, the court finds that Mr. Brooks appraisal should be subject to an adjustment of $25,000 since he estimated cleared land to be greater than cleared land in reality. The plaintiff values this property at $730,000. The defendant values the property at $900,000.
In addition to the horse farm, the defendant conducts a store for the sale of carriages, sleighs and horse accoutrements. He has an inventory of horse and sleigh bells, antique blankets, numerous carriages and sleighs. The defendant values the carriages, accoutrements and store inventory at $107,000. Mr. Greenall, an independent appraiser, has valued this property at $200,000. However, he included some property that the defendant says he was holding on consignment and other property that was subsequently sold worth $25,000.
The plaintiff is a horse person. Her business is the boarding, stabling and feeding of horses. She has been a horse person since her earliest youth, and during the marriage, has worked as a housewife caring for the household and raising the parties' children and caring for the horses. She is 50 years of age. While at her deposition in July and October, 1994, she described her health as "quite well", she testified at trial that she started having back problems this last year and has a "chronic back problem" involving "degenerative discs and a fracture that never healed." She also testified that she has severe osteoarthritis. She stated, however, that she works around these physical disabilities, and it is clear from the evidence that she does carry out her work of the care, boarding and stabling of the twelve horses presently boarded at the farm.
The defendant is in the business of driving horses. He began this business in 1976. Prior to that time, he had worked for Sippin Brothers Fuel as a truck driver, then for Firestone in CT Page 11287 Norwalk for a period of three years, then as a franchise operator for Paint Master from 1969 to 1973 or 1974. He, too, has suffered from chronic and disabling back problems since he was nineteen. He has worn a back brace for twenty-five years until a totally disabling injury in 1986 forced him to take months of bed rest and intensive physical therapy. Since 1987, he has been able to work longer hours and devote more energy to improving and maintaining the farm. He is 52 years of age.
The parties have both devoted their lives to the farm. While the plaintiff's financial contribution has, perhaps, been greater, the defendant has contributed time, labor and money. They both have an equal share in the equity in this property.
As previously noted, the plaintiff's mother has contributed $48,000 to the conversion of the parties' two car garage to an in-law apartment and then the construction of a new garage with storage over. She has also gifted $8,000 to remodelling the main house kitchen. She has lived rent-free with the parties for the last eight years. She has no mortgage on the property, and no lien and there was no expectation that her investment be repaid.
Mrs. Hamaan is the life beneficiary of two trust funds, each containing principal in excess of $400,000. The plaintiff is the vested remainder beneficiary of one of these trusts. Mrs. Hamaan is 81 years of age, drives the Cadillac car listed on the plaintiff's financial affidavit and has the means to move to other living quarters with or without her daughter, the plaintiff. She is not a party to this action and has not intervened to protect her interests. Her health has been described as "not very good" the last few months. She has had cancer surgery and has asthmatic bronchitis. She is very arthritic but is mobile with a walker. She does fix her own meals in her apartment. In June, she drove by herself to Virginia in the Cadillac automobile.
The marriage of the parties broke down in 1987. The parties both testified that there has been no intimate relations between them since that date. The plaintiff moved out of the parties' bedroom in March, 1993. The plaintiff admitted writing a love letter to a Mr. George Kalinas in the 1970's although she testified it was all fantasizing. She also wrote a love letter to Mr. Caterson in June, 1993. While the plaintiff has sought to make something of the defendant's relationship with Sally Fleming and with Ms. Edwards, the court finds that these relationships were purely those of employer and employee as to the former and CT Page 11288 that of teacher and pupil as to the latter. The court finds that the cause of the breakdown was the relationship between the plaintiff and Mr. Caterson.
The dispute between the parties is essentially the division of marital assets. The defendant's position is that the farm should be sold and the net proceeds divided between the parties. The plaintiff, however, wishes to increase the horse stables in the new barn and buy out the defendant's interest in the farm. It is understandable that the defendant does not wish the plaintiff and Mr. Caterson to take over the defendant's family farm at any
price.
In determining the proper orders in this case the court must consider the factors set forth in § 46b-81 and § 46b-82 of the General Statutes together with the provisions of § 46b-62. With respect to alimony and a division of the property of the parties, the law to be considered as been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes § 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530 (1980); Watson v. Watson, 221 Conn. 698, 710 (1992). CT Page 11289
The court has considered all of the criteria of §§ 46b-81 and46b-82 of the General Statutes together with all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr,183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232,234 (1982).
Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5
(1985), and that the court need not give equal weight to each factor. Kane v. Parry, 24 Conn. App. 307, 313-14 (1991).
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. The plaintiff is at fault for the breakdown of the marriage.
The court enters the following orders:
1. A decree of dissolution of the parties' marriage shall enter on the defendant's cross complaint on the grounds of irretrievable breakdown of the marriage.
2. a. The real estate known as 110-120 Knapp Street, Easton, Connecticut, shall be listed for sale immediately at a price to be agreed upon by the parties, and the net proceeds of sale shall be divided equally between the parties after payment to plaintiff's mother, Mrs. Hamaan, of the sum of Forty-five Thousand ($45,000) Dollars. A specific value does not need to be determined as the market will make the fairest determination of the farm's value. If it takes a long time to sell, time and other unpredictable factors may CT Page 11290 influence its "value."
 b. Net proceeds to be divided, after payment to Mrs. Hamaan, shall mean all sums remaining after the payment of real estate commissions, taxes, attorneys' fees and usual and customary closing costs.
 c. If the parties cannot agree on a listing price, they shall each choose an appraiser and the two appraisers shall choose a third appraiser. The average of the three appraisers' recommendations for the listing price shall be the listing price. Any offer within five (5%) percent of the listing price shall be accepted by the parties. In the event the "family farm" is not sold within six (6) months, a lower price shall be selected by the appraisers. This procedure shall continue every six (6) months until the real estate is sold.
 d. The court retains jurisdiction to resolve any differences or disputes between the parties regarding the sale of this property.
3. Until the sale is completed, the defendant shall be granted exclusive possession of the apartment within the marital home currently occupied by the plaintiff's mother, and the plaintiff and her mother shall have exclusive possession of the remainder of the marital home. This is so that tensions between both parties will be minimized and each will have the privacy they need. If plaintiff's mother chooses to install a stairway elevator device for her convenience, the defendant will share one-half the cost of said installation.
4. Until the farm is sold, the plaintiff shall continue to run the boarding business and the defendant shall continue to run the store and the horse training business and each shall retain his or her respective earnings.
5. Until the sale of the family farm is complete, the real estate taxes on the entire family farm shall be paid from the rental income on the rental house on the property, as has been the parties' practice.
6. Each party shall pay one-half of any maintenance costs for any portion of the family farm over $250, provided consent to all such repairs is obtained in writing before the repairs CT Page 11291 are commenced. Repairs that can be made by the defendant shall be made by him.
7. The defendant shall pay for his own utilities, cable TV, telephone, food, personal and medical expenses and the costs of running the store and training business out of his earnings. Plaintiff shall pay for her own utilities, cable TV, telephone, food, personal and medical expenses and the costs of running the boarding business and ordinary repairs up to the amount of $250 for each repair out of her earnings.
8. After the sale of the family farm, each party shall be forever barred and restrained from owning any interest (directly or indirectly) in the family farm and/or from residing on any portion of said family farm, whether permanently or temporarily.
9. The defendant shall pay One ($1.00) Dollar per year as and for alimony to the plaintiff for his lifetime, her lifetime or until the plaintiff's remarriage or cohabitation. The plaintiff shall pay One ($1.00) Dollar per year as and for alimony to the defendant for her lifetime, his lifetime or until the defendant's remarriage or cohabitation.
10. All other property, including stock, bank accounts, furniture, appliances, pets, all horse carriages and accessories and the store inventory shall be divided equally between the parties. If the parties cannot agree on an equal division, the division of said property shall be referred to Family Relations for mediation. If the parties still cannot agree on an equitable division of this property, they shall return to court for further orders in this regard.
11. The defendant shall transfer to the plaintiff all of his right, title and interest in and to the 1988 Ford F-250 Pickup truck and the defendant shall retain ownership of the 1988 Ford F-350 Pickup truck and the 1992 Ford Pickup truck.
12. The defendant shall be granted exclusive possession of his bell collection, including but not limited to the acorn bells currently held by plaintiff's counsel. The plaintiff shall be granted exclusive possession of her teddy bear and carousel collections.
13. Each party shall be responsible for her or his own medical CT Page 11292 insurance and unreimbursed medical expenses.
14. Each party shall maintain the life insurance policies in his or her respective names and shall name each other as primary beneficiary of at least Ten Thousand ($10,000) dollars in face value of life insurance for as long as each has the alimony obligation under paragraph nine herein.
15. Each party shall pay her or his own attorney's fees.
Orders shall enter in accordance with the foregoing. Defendant's counsel shall prepare the judgment file.
EDGAR W. BASSICK, III, JUDGE